IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TANYA COHEN,[1] | § | |
| | § | |
| Petitioner Below– | § | No. 618, 2018 |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| DEPARTMENT OF SERVICES | § | Court Below–Family Court |
| FOR CHILDREN, YOUTH | § | of the State of Delaware |
| AND THEIR | § | |
| FAMILIES/DIVISION OF | § | File Nos. CN17-03201 |
| FAMILY SERVICES, CHLOE | § | CN05-02018 |
| M. FRANKS, CONNOR | § | CN17-03202 |
| ABBOTT, MARK MILLER, | § | CN17-06343 |
| KADEN MOORE, | § | |
| | § | Petition Nos. 17-14747 |
| Respondents Below– | § | 17-14751 |
| Appellees. | § | 17-14749 |
| | § | 17-35290 |

Submitted: September 9, 2019
Decided: September 23, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant, Tanya Cohen ("the Maternal Grandmother"), filed this appeal from an order of the Family Court dated December 6, 2018.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

The Family Court's order denied the Maternal Grandmother's petitions for guardianship of five of her grandchildren. After careful consideration, we find no error in the Family Court's judgment. Accordingly, we affirm.

(2) The record reflects that the appellee Chloe M. Franks ("the Mother") is the mother to six children: L.F. (born 2004), Z.F. (born 2006), S.F. (born 2010), B.F. (born 2009), M.F. (born 2014), and K.F. (born 2017). The Maternal Grandmother filed petitions for guardianship of L.F., Z.F., S.F., and M.F. in May of 2017 after the children came into the custody of the Department of Services for Children, Youth and Their Families/Division of Family Services ("DFS").[2] The Maternal Grandmother filed a petition for guardianship of K.F. after his birth later in 2017. On June 6, 2018, the petitions were stayed because approval for the children's placement with the Maternal Grandmother under the Interstate Compact on the Placement of Children ("ICPC") remained outstanding and the Family Court was poised to hear DFS's petitions to terminate the parental rights of each of the children's parents.

---

[2] The Maternal Grandmother obtained guardianship over B.F. in 2009. That guardianship remained in place until the May 17, 2017 preliminary protective hearing in the Mother's dependency/neglect proceedings when the Family Court found that the Maternal Grandmother had abdicated her responsibilities to B.F. as his guardian when she left B.F. in the Mother's custody. Because the Maternal Grandmother did not realize her guardianship had been terminated, she did not file a separate petition for guardianship for B.F. after the May 17, 2017 hearing.

2

(3)     The Family Court held a hearing on the Maternal Grandmother's petitions on November 9, 2018.  The Family Court heard testimony from the Maternal Grandmother; two of the Maternal Grandmother's sisters, one of whom also had a petition for guardianship for two of the children pending; the Mother; and a DFS treatment worker.

(4)     The undisputed testimony established that the DFS-initiated ICPC request for placement of the children with the Maternal Grandmother in Pennsylvania had not yet been approved at the time of the hearing.  The Family Court heard testimony that the Maternal Grandmother had been a victim of domestic abuse and sexual abuse for which she had not received treatment.  The Family Court also heard testimony that the Maternal Grandmother had guardianship over three of the Mother's children at various points in time and that the children had alleged they suffered from physical abuse while in her custody.  DFS opposed the Maternal Grandmother's petitions because, among other reasons, the Maternal Grandmother did not view herself as a victim of domestic violence, despite the fact that her paramour had recently pointed a gun at her; she had not received treatment for sexual abuse she suffered as a child; and she relied upon her paramour for housing and income.

3

(5) In reviewing the Maternal Grandmother's petitions for guardianship, the Family Court applied the legal standard set forth in 13 *Del. C.* § 2330. Under § 2330(a)(2), the Family Court must establish, after a hearing on the merits, that the petitioner has established by a preponderance of the evidence that (i) the child is dependent, neglected or abused and the reasons therefore; and (ii) it is in the best interests of the child for the guardianship to be granted. The Family Court found the first prong of the analysis was satisfied as evidenced by its December 6, 2018 order finding clear and convincing evidence that the children were dependent in their parents' care and terminating their parental rights in the children.[3] The Court then considered the best interests of the children factors set out in 13 *Del. C.* § 722.[4]

---

[3] The Mother appealed the Family Court's order terminating her parental rights and we affirmed. *Franks v. DSCYF*, 2019 WL 4512028 (Del. Sep. 19, 2019).

[4] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding the custodians and residential arrangements; (iii) the interaction and interrelationship of the child with parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 Del. C. § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722(a). Here, the Mother and M.F.'s father consented to the Maternal Grandmother's petitions for guardianship. The Family Court must still engage in a best interests analysis if the child is in DFS custody, even if the parents consent to the guardianship. 13 *Del. C.* § 2330(a)(1).

(6)     In considering the evidence, the Family Court found that only the Mother's wishes weighed in favor of granting the petitions.  However, the Family Court did not find the Mother's testimony that the Maternal Grandmother was her "best friend" to be credible and concluded the Mother's wishes factor weighed only slightly in favor of granting the petitions.  The Family Court found the remaining factors, as well as the children's history in the Maternal Grandmother's care, weighed against granting the petitions.  The children had not visited with the Maternal Grandmother since coming into DFS custody because the children's therapists had not recommended visits.  The court also considered the children's comments to the court.  Of the three older children who spoke with the court, only S.F., who did not remember the Maternal Grandmother, expressed a desire to live with her.  The Family Court found the younger two children were unlikely to have any memory of the Maternal Grandmother due to their young ages.  After balancing the factors, the Family Court concluded that it was in the children's best interests to deny the Maternal Grandmother's petitions for guardianship.

(7)     Our appellate review of a Family Court guardianship decision includes a review of both the law and the facts.[5]  If the Family Court

---

[5] *Ogden v. Collins*, 2010 WL 4816059, *5 (Del. Nov. 29, 2010).

correctly applied the law, we review for an abuse of discretion.[6] We will not disturb the Family Court's factual findings if those findings are supported by the record.[7] If the determination of facts turns on the credibility of the witnesses who testified under oath in court, we will not substitute our opinion for that of the trial judge.[8]

(8) After careful consideration of the parties' respective positions on appeal and after a thorough review of the record, the Court has determined that this appeal should be affirmed on the basis of the Family Court's well-reasoned decision dated December 6, 2018. It is clear that the trial judge considered the evidence under the appropriate legal standards and applied a logical deductive process in concluding that denying the Maternal Grandmother's guardianship petitions was in the best interests of the children. The Maternal Grandmother's allegation on appeal that the Family Court judge's alleged friendship with Chief Baylor—who testified at the Mother's termination of parental rights ("TPR") hearing—created a conflict of interest is not supported by the record. Chief Baylor testified at the Mother's TPR hearing about the Mother's pending criminal charges and her cooperation with law enforcement officials. The Family Court did not rely

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

6

on this testimony in its decision denying the Maternal Grandmother's petitions for guardianships.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice